UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

KNOLL, INC.,

        Plaintiff,

  -v-

ARTHUR GORDON ASSOCIATES,
d/b/a GORDON INTERNATIONAL,

        Defendant.

-----------------------------------------------------------X

KNOLL, INC.,

        Plaintiff,

  -v-

PALAZZETTI EXPRESS, INC.,

        Defendant.

-----------------------------------------------------------X

CASPRINI GRUPPO INDUSTRIALE S.p.A.,

        Plaintiff,

  -v-

KNOLL, INC.,

        Defendant.

-----------------------------------------------------------X

04 CIV. 8800 (DLC)
ECF CASE

STATEMENT OF
CONTESTED AND
UNCONTESTED
FACTS IN OPPOSITION
TO ARTHUR GORDON
ASSOCIATES' MOTION
FOR SUMMARY JUDGMENT

04 CIV. 8801

04 CIV. 9787

All admissions made herein are made only for the purposes of defendant's summary judgment motion, see Local Civil Rule 56. 1.

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted that said quotation is (without italics) from said letter, but Plaintiff has no knowledge or information that said letter was actually sent, denies that said quotation ever expressed the corporate position of Plaintiff or Plaintiff's predecessors in interest and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document.

11. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

12. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

13. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

14. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

15. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

16. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

17. Admitted that said quotation is (without italics) from said letter, denies that said letter ever expressed the corporate position of Plaintiff or Plaintiff's predecessors in interest and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

18. Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any

statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

19.     Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document.  Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

20.     Admitted.  Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

21.     Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document.  Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

22.     Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document.  Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

23.     Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document.  Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

24.     Admitted, and Plaintiff further states that Defendant would have had no

access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

25.  Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

26.  Admitted, and Plaintiff further states that Defendant would have had no access to, nor knowledge of, this document. Additionally, Plaintiff states that any statement, action or reference to "Knoll" is properly a reference to a predecessor of Knoll.

27.  Admitted.

28.  Admitted.

29.  Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

30.  Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

31.  Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

32.  Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

33.  Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

34. Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f).

35. Plaintiff cannot admit or controvert this statement because it requires discovery of Defendant, pursuant to Rule 56(f).

36. Controverted and Plaintiff requires discovery of Defendant, pursuant to Rule 56(f). Plaintiff also states that the chair in the September 1987 advertisement is not the subject of this litigation.

37. Admitted as to "Gordon International" only and that its predecessors consistently maintained complete files regarding other companies' sales or offers to sell furniture designs featuring Plaintiff's trademarks. The remainder of this paragraph is admitted.

38. Admitted as to "Gordon International" only.

39. Admitted as to defendant only.

40. Admitted as to "Gordon" only.

41. Admitted as to "Gordon" only.

42. Admitted as to "Gordon" only.

43. Admitted as to defendant only.

44. Admitted as to defendant only.

45. Admitted as to "Gordon" only.

46. Admitted as to "Gordon" only.

47. Admitted as to "Gordon" only.

48. Admitted as to "Gordon" only.

49. Admitted as to defendant only.

50. Admitted as to defendant only.

51. Admitted as to defendant only.

52. Admitted.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted.

57. Admitted.

58. Controverted and Plaintiff requires discovery of defendant, pursuant to Rule 56(f).

59. Admitted.

60. Admitted.

61. Admitted.

Plaintiff Submits the Following Additional Facts, Pursuant to Local Rule 56.1 (b):

62. Ludwig Mies van der Rohe was a world-famous architect and one of the most influential architects of the twentieth century. He was the director of the Bauhaus school of design in Germany from 1930 to 1933, and moved to the United States in 1937 to continue his architectural activities. (Magnusson Dec. ¶ 4).

63. Among Mies van der Rohe's more well-known architectural works are the German Pavilion at the Barcelona International Exhibition; the Tugendhat House in Brno, Czech Republic; the Lakeshore Drive Apartments in Chicago, Illinois; and the Seagram Building in New York City. (Magnusson Dec. ¶ 5).

64. As well as being an architect, Mies van der Rohe designed some of the most important and influential furniture of the twentieth century. His Barcelona Chair is renowned. He also designed the Barcelona Stool, the Barcelona Couch, the Barcelona Table, and the flat Brno Chair. (Magnusson Dec. ¶ 6; Defendant's Rule 56.1 Statement, ¶ 5).

65. Knoll is a corporation organized and existing under the laws of the State of Delaware, maintaining a place of business at 76 Ninth Avenue, New York, New York. Knoll is a leading designer and manufacturer of branded furniture. Since its founding in 1938, Knoll (and its predecessors[1]) has been recognized as a design leader in the furniture and furniture related field on a worldwide basis. (Magnusson Dec. ¶¶ 2-3).

66. Mies van der Rohe knew and worked with the founders of Knoll's predecessors, Hans and Florence Knoll. Knoll and its predecessors have continuously manufactured, displayed, promoted and sold the Barcelona Collection since at least as early as January 1, 1954. After 1954, Knoll worked with Mies van der Rohe in refining the pieces in its line. (Magnusson Dec. ¶ 8).

67. Mies van der Rohe assigned all of his rights, title and interest in and to the designs of the Barcelona Collection, by an agreement of November 1, 1965, to predecessors of Knoll, who transferred that title to Knoll. (Magnusson Dec. ¶ 9; Defendant's Rule 56.1 Statement, ¶ 7). Defendants have admitted the existence of "chain-of-title" from Mies van der Rohe giving rise to Knoll's current rights. (See, e.g.,

---

[1] The term "predecessor" as used in this memorandum with respect to Knoll refers to Knoll's predecessors as to rights in the "Barcelona Collection" items of furniture.

Gordon's Response to Plaintiff's Requests for Admission Nos. 136-144, 147-148, 151-182; Misthal Dec. Exhibit A).

68.  The various furniture items in the Barcelona Collection have been the subject of third party commentary in numerous books, newspaper articles and magazine articles, virtually all of which identify Knoll or its predecessors as the source of these items. (Magnusson Dec. ¶ 12; Misthal Dec. Exhibit B).

69.  The various furniture items in the Barcelona Collection are also in the collections of numerous museums featuring design around the world, and have been featured in a number of museum exhibitions. For example, the Barcelona Collection is in the Museum of Modern Art's design collection. Some of these pieces have been there since the 1950s. The Museum of Modern Art, as well as other museums, always identify Mies van der Rohe as the designer of the Barcelona Collection, and Knoll as the source and manufacturer of these items. (Magnusson Dec. ¶ 13).

70.  As a result of the foregoing sales, manufacturing and promotional efforts, and the wide-spread third party acknowledgments, the Barcelona Chair, the Barcelona Stool, the Barcelona Couch, the Barcelona Table and the Flat Brno Chair have come to be associated with Knoll as their source. (Magnusson Dec. ¶ 14).

71.  In October, 2003, Knoll filed applications in the United States Patent and Trademark Office, seeking to register, as trademarks, the Barcelona Collection items. After examination and approval by the Trademark Examiner, the applications were published for opposition purposes, were not opposed by the defendant (or anyone else), and issued as registrations in October, 2004. (Misthal Dec., Exhibit C).

72. Knoll is the owner of the following trademark registrations, duly issued by the United States Patent and Trademark Office, for the items of furniture in the Barcelona Collection and for the word mark "Barcelona", as follows: Barcelona Chair, No. 2,893,025 (issued October 12, 2004); Barcelona Stool, No. 2,894,977, Barcelona Couch, No. 2,894,980, Barcelona Table, No. 2,894,979 and Flat Brno Chair, No. 2,894,980 (all issued October 19, 2004); and U.S. Trademark Registration No. 772,313 for the mark BARCELONA (issued June 30, 1964). Each of these registrations is in full force and effect. (Misthal Dec. Exhibit C). (See, e.g., Palazzetti Express' Response to Plaintiff's Requests for Admission Nos. 122-136; Gordon's Response to Plaintiff's Requests for Admission Nos. 118-132; Misthal Dec. Exhibit A).

73. Furthermore, the "Barcelona" Registration No. 772,313 is incontestable. The registration is conclusive evidence of Knoll's exclusive right to use the "Barcelona" trademark for items of furniture. See 15 U.S.C. § 1115. In their motions for summary judgment, defendants have not challenged the validity of this registration.

74. Defendants have admitted that the items of furniture which they sell are within the scope of Knoll's trademark registrations. These sales, which take place in New York and throughout the United States, have continued despite Knoll's assertion of rights in these registrations. (See, e.g., Palazzetti Express' Response to Plaintiff's Requests for Admission Nos. 11-34, 40-49; Gordon's Response to Plaintiff's Requests for Admission Nos. 11-30, 41-45; Misthal Dec. Exhibit A).

75. Knoll has vigorously exploited its rights in the Barcelona Collection, its association with Mies van der Rohe and the "Barcelona" trademark. (Magnusson Dec. ¶¶ 10, 15).

76. Items in the Barcelona Collection have continuously been in Knoll's and its predecessors' price lists and catalogues, starting at least as early as 1954; have been the subject of numerous advertisements and promotional materials; and have been the subject of numerous third party commentary (Magnusson Dec. ¶¶ 10, 12; Misthal Dec., Exhibits B and D). Many articles in design magazines and other publications show items in the Barcelona Collection, attributing the source of these items to Knoll. (Magnusson Dec. ¶ 12; Misthal Dec., Exhibit E).

77. Likewise, Knoll has continuously used the "Barcelona" trademark to identify its items of furniture. The trademark has been used by Knoll and its predecessors in price lists and catalogues, and in advertisements, among other ways. (Magnusson Dec. ¶ 10; Misthal Dec., Exhibit D).

78. Finally, the promotional materials used by Knoll consistently tout the fact that Knoll's rights evolve directly from Mies van der Rohe. It does this by making extensive use of the Mies van der Rohe name when advertising and promoting the Barcelona Collection and by materials which advise customers and potential customers, and persons in the trade, that Knoll has the exclusive rights from Mies van der Rohe to produce the Barcelona Collection items. (Magnusson Dec. ¶¶ 10, 12, 13; Misthal Dec., Exhibit D).

79. Knoll and its predecessors, by virtue of their own sales, advertising and promotional endeavors, have created a substantial market for items in the Barcelona Collection. (Magnusson Dec. ¶ 11; Pfeiffer Dec., ¶ 6).

80. Over the years, Knoll and its predecessors have taken continuous steps to enforce its rights. It has continuously informed both furniture dealers and the public

interested in the Barcelona Collection that only Knoll has the right, from Mies van der Rohe, to produce these items, and that Knoll is the only source of original authorized Barcelona Collection items. Knoll has also continuously informed furniture dealers and the interested public, to be aware of fakes which were imitating the Barcelona Collection. (Magnusson Dec., ¶¶ 15, 16).

81. Letters were also written to companies who improperly used the "Barcelona" trademark or who advertised that their items of furniture were "original". (Misthal Dec., Exhibit F).

82. Albert Pfeiffer, who acted as one of Knoll's spokepersons from 1995 to 2001 and who was curator of the Knoll museum, located in East Greenville, Pennsylvania, always made a point of advising architects, designers and design students, in numerous presentations that he made, that only Knoll had the right to sell authorized Mies van der Rohe Barcelona Collection items. (Pfeiffer Dec., ¶¶ 1-3). He also advised customers and the media that only Knoll had the right to sell the Barcelona Collection, and that Knoll deplored the practice of companies copying these original designs. (Pfeiffer Dec., ¶¶ 3-5).

83. After the issuance of its trademark registrations, Knoll took steps to record those registrations with the United States Customs and Border Protection Service of the U.S. Department of Homeland Security. (Misthal Dec., Exhibit H).

84. Upon issuance of these registrations, Knoll circulated a press release (Misthal Dec., Exhibit I), advising that it had successfully obtained federal registration and that it was taking steps to record its registrations with Customs. The press release

was picked up by numerous publications in the furniture field and also by newspapers and magazines of more general circulation. (Misthal Dec., Exhibit J).

85. Knoll also started a letter writing campaign, seeking to have companies voluntarily stop from selling illicit copies of the Barcelona Collection items. Over 15 letters were sent out. The vast majority of these companies agreed to cease selling their knockoff copies. (Misthal Dec., Exhibit K).

86. Gordon is a New York corporation, doing business at 200 Lexington Avenue, New York, New York. (Gordon Counterclaim, ¶ 81 ).

87. Defendant is in the business of copying items of famous furniture designs from a multitude of well-known designers, not just the designs of Mies van der Rohe which are the subject of the present litigation. Gordon has copied such well-known designers as Marcel Breur, Le Corbusier, Arne Jacobsen, C.R. Mackintosh, and many others. (Misthal Dec. Exhibit BB).

88. Defendant's own documents and their current webpage (Misthal Dec., Exhibit CC) tout the fact that their furniture items come as close as possible to the "original" Mies van der Rohe pieces.

89. Defendant states that its "philosophy" is to "...sell products made as closely as possible to available original specification standards" and that "we take pride in our accurate interpretations of designs which were originally produced in the early and mid-twentieth century, and which have become perennial favorites of interiors specifiers the world over." (DW 19425-27; Misthal Dec. Ex. DD).

90. Defendant never conducted a search or sought the advise of counsel to determine if the designs of the furniture in the Barcelona Collection were owned by any third party.

91. Representatives of Gordon have recently stated that their items of "Barcelona" furniture are made in the same factories that make Knoll's items. (Flatt Dec. ¶ 3). This is simply not true. (Magnusson Dec., ¶ 18).

92. Defendant has misrepresented its pieces of furniture in an effort to cause customer confusion.

93. Defendant also has continuously used Knoll's registered BARCELONA trademark to identify its copies of the Barcelona Collection, and to associate these items with Mies van der Rohe. (See, e.g., Gordon's Response to Plaintiff's Requests for Admission Nos. 111-115; Misthal Dec. Exhibit A).

94. In 2000, Gordon's website (Misthal Dec., Exhibit GG), showed its "Barcelona Series" of furniture items (K024617, K024622), noted that "Some designs seem to defy the ebbing and flowing of fashion. And yes, there is an upbeat addition to death and taxes: Mies design." (K024622). Other pages called to attention the relationship with these items to Mies van der Rohe: "Mies Van Der Rohe …1930…yes! Hey there Mies, nicely done." (K024624) or "Designed by Mies Van Der Rohe in 1927" (K024626). In fact, the web page included a two page "Mies Bio" (K024628-29).

95. In Gordon's 12/03 Buyer's Guide (Misthal Dec. Exhibit HH), Gordon uses the Mies van der Rohe name or his "MVR" initials to sell its products (DW 10741-10746), referring to some of the items as the "Barcelona Ottoman" or the "Barcelona Lounge Chair" (DW 10745).

96. From a visual point of view, defendants' pieces, to an average customer, would appear identical or virtually identical to the Knoll items. It would take a Knoll representative, or furniture dealer, or sophisticated customer to tell them apart. (Lutz Dec. ¶ 8).

97. Many customers buy Defendant's copies because of several factors: (i) the products are visually similar to the Knoll originals; (ii) Defendant's copies use both the Mies van der Rohe and Barcelona names, thereby minimizing any difference between these products, (iii) they believe Defendant's pieces are "originals" or they are confused and do not have the time or resources to investigate these issues and (iv) they simply want the Barcelona Collection "look" and believe their visitors will never know the difference. (Lutz Dec., ¶ 9).

98. Defendant has admitted that its items of furniture have "substantially the same visual appearance" as Knoll's authorized "Barcelona Collection" items. (See, e.g., Gordon's Response to Plaintiff's Requests for Admission Nos. 90-94; Misthal Dec. Exhibit A).

99. In the post sale context, that is, with a furniture item in an office or home setting, an ordinary observer with an interest in modern furniture, who was aware of the Knoll Barcelona Collection, would not be able to distinguish between the Knoll authorized originals and the defendant's copies. (Lutz Dec. ¶ 10).

100. The public is also harmed since purchasers of Defendant's items, who mistakenly believe that they have purchased an authorized and legitimate Barcelona Collection, will likely not be able to sell them on the secondary market. (Lin Affid. ¶ 6; Weinberg Affid. ¶ 6 ).

101. If a customer buys Defendant's unauthorized reproduction of a piece in the Knoll Barcelona Collection, Knoll may well have lost a customer, since there is an overlap in their customer base. (Lutz Dec., ¶ 11).

102. The existence of the Defendant's visually similar but unauthorized copies in the marketplace diminishes the value and salability of the originals in Knoll's line of Barcelona Collection products. (Lutz Dec., ¶ 11).

103. The existence of the unauthorized copies in the marketplace diminishes the value of the "originals" in the possession of individual or corporate customers. (Lutz Dec., ¶ 11; Lin Dec., ¶ 6).

104. Defendant's activities detailed above cause confusion at a point in time past the initial sale of these items.

105. The following takes place at a reputable gallery which sells modern classical furniture:

(a) Whenever a furniture product which is visually similar to any one of the above Mies van der Rohe pieces, made by Knoll, is brought to such gallery, it is examined carefully to determine whether or not it is an "original" authentic production, that is, a product made by Knoll. The examination is done to find markings and characteristics of the piece that enable us to determine that it is a Knoll production item.

(b) If it is identified as a Knoll production, the gallery will consider placing it on sale. Depending on the piece's age, condition and provenance, the gallery in the past sold the Barcelona chair in the range of $3,000 to $6,000, the Barcelona stool in the range of $1,500-$3,500, the Barcelona couch in the range of $4,500 to $10,000 and the flat Brno chair in the range of $1,500-$1,800.

(c) If the gallery is ever offered a "copy" of a Mies/Knoll piece, the gallery rejects it and will not sell it. Such rejections take place because such fakes have little or no value for a knowledgeable buyer of modern furniture. (Lin Dec. ¶¶ 4-6; Weinberg Dec., ¶¶ 4-6).

106. Defendant does not need to sell its copies of Knoll's items in order to compete in the furniture business. (Magnusson Dec. ¶ 16).

107. Defendant's business model comprised entering the market for the Barcelona Collection created by Knoll. Knoll created the demand for the pieces of furniture in the Barcelona Collection. (Magnusson Dec. ¶ 11; Pfeiffer Dec. ¶ 6).

108. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 8.

109. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 9.

110. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 10.

111. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 11.

112. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 12.

113. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 13.

114. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 14.

115. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 15.

116. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 16.

117. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 17.

118. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 19.

119. Plaintiff states that Defendant would have had no access to, nor knowledge of, the memorandum referred to in Defendant's Statement of Uncontested Facts No. 20.

120. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 21.

121. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 22.

122. Plaintiff states that Defendant would have had no access to, nor knowledge of, the memorandum referred to in Defendant's Statement of Uncontested Facts No. 23.

123. Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant's Statement of Uncontested Facts No. 24.

124.  Plaintiff states that Defendant would have had no access to, nor knowledge of, the letter referred to in Defendant.'s Statement of Uncontested Facts No. 25.

Dated:     May 13, 2005

George Gottlieb, Esquire (GG5761)
Barry A. Cooper, Esquire (BC 9298)
Marc P. Misthal, Esquire (MPM 6636)
GOTTLIEB, RACKMAN & REISMAN, P.C.
270 Madison Avenue, 8th Floor
New York, New York 10016-0601
(212) 684-3900
E-Mail: ggottlieb@grr.com

and

Samuel W. Braver, Esquire
BUCHANAN INGERSOLL, PC.
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
(412) 562-8939
E-Mail: Braversw@bpic.com
Attorneys for Knoll, Inc.