**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

**KNOLL, INC.,**                                        :

                                             :   **04 CIV. 8800 (DLC)**

                     Plaintiff,                   :   **ECF CASE**

                                               :

           - v -                             :   **REDACTED**

                                                 :   **DEFENDANTS'**

**ARTHUR GORDON ASSOCIATES,**      :   **MEMORANDUM IN SUPPORT**

*d/b/a* **GORDON INTERNATIONAL,**        :   **OF THEIR CONSOLIDATED**

                                                 :   **MOTION FOR SUMMARY**

                     Defendant.              :   **JUDGMENT RE: FAIR USE**

-------------------------------------------------------------X

**KNOLL, INC.,**                                        :

                                                 :

                     Plaintiff,                   :

                                                 :

           - v -                             :   **04 CIV. 8801**

                                                 :

**PALAZZETTI EXPRESS, INC.,**           :

                                                 :

                     Defendant.              :

-------------------------------------------------------------X

**CASPRINI GRUPPO INDUSTRIALE S.p.A.,**   :

                                                 :

                     Plaintiff,                   :

                                                 :

           - v -                             :   **04 CIV. 9787**

                                                 :

**KNOLL, INC.,**                                        :

                     Defendant.              :

-------------------------------------------------------------X

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTS ....................................................................................................................2

III.    ARGUMENT.........................................................................................................12

        A.      Summary Judgment Standard ...............................................................12

        B.      Fair Use .................................................................................................13

        C.      Defendants' Descriptive Use .................................................................16

        D.      Defendants' Good Faith ........................................................................19

IV.     CONCLUSION......................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)....................................................................................................13

*Best Cellars, Inc. v. Wine Made Simple, Inc.,*
    320 F.Supp.2d 60 (S.D.N.Y. 2003) ...................................................................23

*Car-Freshener Corporation v. S.C. Johnson & Son, Inc.,*
    70 F.3d 267 (2nd Cir. 1995) .............................................................14, 15, 16, 18, 20, 24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)....................................................................................................13

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.,*
    125 F.3d 28 (2nd Cir. 1997) ...............................................................14, 15, 16, 18, 20

*Deere & Co. v. MTD Holdings Inc.,*
    2004 WL 324890 (S.D.N.Y. 2004).....................................................................23

*Eli Lilly & Co. v. Revlon, Inc.,*
    577 F.Supp. 477 (S.D.N.Y. 1983) .....................................................................14

*EMI Catalogue v. Hill, Holiday, Connors, Cosmopulos Inc.,*
    228 F.3d 56 (2nd Cir. 2000) ...............................................................................18, 21

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.,*
    111 F.3d 993 (2nd Cir. 1997) .............................................................................22

*Kellogg Co. v. National Biscuit Co.,*
    305 U.S. 111 (1938)....................................................................................................25

*Lang v. Retirement Living Publ'g Co.,*
    949 F.2d 576 (2nd Cir. 1991) .............................................................................20

*Nabisco, Inc. v. PF Brands, Inc.,*
    191 F.3d 208 (2nd Cir. 1999) .............................................................................2

*Nora Beverages, Inc. v. Perrier Group of America, Inc.,*
    269 F.3d 114 (2nd Cir. 2001) .............................................................................22

*Pirone v. McMillan, Inc.,*
    894 F.2d 579 (2nd Cir. 1990) .............................................................................2

*Radio Channel Networks, Inc. v. Broadcast.com, Inc.,*
    1999 WL 124455 (S.D.N.Y. 1999)......................................................14, 16, 18, 20, 21

*Regal Jewelry Co. v. Kingsbridge Int'l, Inc.,*
  999 F.Supp. 477 (S.D.N.Y. 1998) ..................................................................23

*Something Old, Something New Inc. v. QVC Inc.,*
  53 U.S.P.Q.2d 1715 (S.D.N.Y. 1999) .......................................................15, 16

*Stewart v. Adidas A.G.,*
  1997 WL 65904 (S.D.N.Y. 1997) ...............................................................13

*Tough Traveler, Ltd. v. Outbound Products,*
  989 F.Supp. 203 (N.D.N.Y. 1997) ..............................................................23

*United States Shoe Corporation v. Brown Group, Inc.,*
  740 F.Supp. 196 (S.D.N.Y. 1990),
  *aff'd without op.,* 923 F.2d 844 (2nd Cir. 1990) ....................................1, 22, 23

*Versa Products Company, Inc. v. Bifold Company (Manufacturing) Ltd.,*
  50 F.3d 189 (3rd Cir. 1995) ......................................................................24

*W.W.W. Pharm. Co. v. Gillette Co.,*
  984 F.2d 567 (2nd Cir. 1993) .............................................................20, 22

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,*
  529 U.S. 205 (2000)...........................................................................17, 22

## **Statutes**

15 U.S.C. §1115(b)(4) ..........................................................................1, 14

15 U.S.C. §1127...................................................................................2

## **Other Authorities**

2 McCarthy On Trademarks And Unfair Competition,
  §11:45 at pp. 90-91 (2005 ed.).................................................................15

Restatement (Third) Unfair Competition
  §28, comment a (1995) .....................................................................14, 18

Restatement (Third) Unfair Competition
  §28, comment c (1995) .................................................................17, 18, 20

Restatement (Third) Unfair Competition,
  §28, comment d .................................................................................22

## **Rules**

FED.R.CIV.P. 56(c)...............................................................................12

FED.R.CIV.P. 56(e)....................................................................................................................13

# I.   <u>INTRODUCTION</u>

Defendants Arthur Gordon Associates, Inc. ("Gordon") and Palazzetti Express, Inc. ("Palazzetti"), as well as Declaratory Judgment Plaintiff Casprini Gruppo Industriale S.p.A. ("Casprini"), have been accused of infringing the "trademarks" in five unpatented furniture designs created by Ludwig Mies van der Rohe over seventy (70) years ago which are **now** being claimed by plaintiff Knoll, Inc. ("Knoll").   In their responsive pleadings, Gordon, Palazzetti and Casprini have each affirmatively asserted the "fair use" defense to Knoll's infringement claims.[1]  By way of their present motion, each of those parties have jointly moved the Court to grant them summary judgment on that particular defense.

The Lanham Act expressly provides a "fair use" defense to claims of trademark infringement and unfair competition which overrides the unauthorized use of another's trademark if a term or design is used in both good faith and in its descriptive, non-trademark sense.  Section 33(b)(4) of the Lanham Act, 15 U.S.C. §1115(b)(4).  This "fair use" defense is designed to protect the free flow of information and ideas in commerce by ensuring that the exclusivity of rights afforded trademark owners in certain words or images "will not over-broadly deprive society of the use of those terms [or designs] in their descriptive sense in commercial communication."[2]   Here, defendants were

---

[1]      The "fair use" affirmative defense was asserted in paragraphs 79 and 89 of Gordon and Palazzetti's Answer and Counterclaims respectively, and by Casprini at paragraph 74 of its Reply To [Knoll's] Counterclaims.

[2]      *United States Shoe Corporation v. Brown Group, Inc.,* 740 F.Supp. 196, 199 (S.D.N.Y. 1990), *aff'd without op.,* 923 F.2d 844 (2nd Cir. 1990).

constrained to use plaintiff's alleged trademarks if they were going to manufacture and sell the unpatented, classic furniture designs now at issue in this case.

Defendants have established each of the requisite elements for a finding of "fair use" as a matter of law in this dispute, even assuming (for purposes of this motion only) that Knoll has valid trademark rights in the subject furniture designs and that defendants reproduction of those furniture designs somehow constitutes a trademark use otherwise violating those rights.  An essential element of any claim of trademark infringement is the assertion of facts demonstrating that the alleged infringers have used a plaintiff's mark as a way of identifying the origin or sponsorship of a defendant's products.[3]  That the defendants in this case use the subject furniture designs simply as articles sold in commerce, rather than as trademarks, is most clearly evidenced by a review of their marketing materials.  Indeed, defendants' use of the furniture designs -- **only as the furniture products themselves** -- is the ultimate example of truly "descriptive use." Given the context in which the furniture designs are used, there can be no genuine dispute that defendants' use is permissible "fair use."

## II.   FACTS

The designs within the Barcelona Collection epitomize Modern design and are, in fact, widely perceived as icons of Twentieth century design.  (Knoll's website, Bergsman

---

[3]   *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 223 (2nd Cir. 1999) (defining "trademark use" as "a use for the designation or a sponsorship or identification of a product"); *Pirone v. McMillan, Inc.,* 894 F.2d 579, 583 (2nd Cir. 1990) (defining "trademark use" as "one indicating source or origin"); *see also,* 15 U.S.C. §1127 (defining a trademark as, *inter alia,* a symbol or device used by a person to identify/distinguish his goods and "indicate the source of the goods").

Affidavit, **Exhibit 1**).  "Mies van der Rohe designed some of the most important and influential furniture of the twentieth century.   His Barcelona chair is renowned." (Magnusson Dec. ¶6).[4]  James D. Lutz, Vice President Sales, KnollStudio, described the "Barcelona Collection" as follows:

> 4.   These five furniture pieces are extremely well known. They appear in most books on modern furniture design and have been displayed in numerous museums, including the Museum of Modern Art in New York City. . . .
>
> 5.   These various furniture pieces are considered extremely "prestigious" furniture.   They are both modern and classic and of the highest quality.   They are often purchased by customers, individual or corporate, that wish to enjoy historically significant fine modern furniture of excellent and well-known design, and who wish their visitors to their homes or corporate offices to appreciate the ambiance of such furniture.

(Lutz Dec. ¶¶ 4-5).[5]

Those designs have long been recognized and acknowledged as being in the public domain.  Indeed, Knoll itself has fostered an environment leading competitors, the public and the media to reasonably believe the furniture designs created by Mies van der Rohe were in the public domain.  In this regard, Knoll has long admitted the public domain aspect of the subject furniture designs -- and has done so on more than one occasion.  In a

---

[4]   Carl G. Magnusson is Knoll's Executive Vice President and Director of Design.  Knoll filed his Declaration in opposition to Defendants' Motion For Summary Judgment re: Laches.

[5]   Knoll filed the Lutz Declaration in opposition to Defendants' Motion For Summary Judgment re: Laches.

***CONTAINS CONFIDENTIA/RESTRICTED CONFIDENTIAL INFORMATION FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER OF THIS COURT.  TO BE OPENED ONLY BY OR AS ORDERED BY THE COURT OR BY STIPULATION OF THE PARTIES SUBJECT TO THE APPROVAL OF THE COURT.***

(Knoll's documents 706365-706367, Bergsman Affidavit, **Exhibit 2**) (confidential and filed under seal).

Likewise, Knoll long ago began publicly advising its customers that these designs (the ones at issue in this case) were in the public domain.  For example, in response to a 1968 letter from Dr. Alan L. Gans (a Knoll customer) who had complained about the advertisement shown below, Robert B. Cadwallader (Vice President of Marketing for Knoll) stated the following:

> The Barcelona chair was originally designed by Mies van der Rohe before 1930.  ***The visual design as such, is in the public domain by this point in time.***  (Emphasis added).



See, Knoll documents K024859 and K024267-68, Bergsman Affidavit, **Exhibit 3**.[6]

Subsequently, in a letter dated November 15, 1968, Knoll wrote to Smolen's protesting the latter's above-noted use of the words "original" and "Barcelona" to describe the Barcelona chair. Although insisting that Smolen's stop publishing such advertisements using those two particular words (Knoll documents K024860-61, Bergsman Affidavit, **Exhibit 3**), **no protest whatsoever was voiced by Knoll concerning Smolen's continued promotion and sale of the Barcelona chair design itself**.

The Smolen's letter exemplifies Knoll's own long-held, public position regarding the designs at issue in this case. While it might complain of a competitor's use of the

---

[6] This was neither a spontaneous nor careless comment by a Knoll company officer. On the contrary, it was a reasoned statement made only after consultation with Knoll's counsel. (10/10/1968 entry to Knoll's privilege log (Letter re: Reply to Dr. Alan L. Gans), Bergsman Affidavit, **Exhibit 4**).

words "original" with "Barcelona" in describing the Barcelona chair, **Knoll never asserted any rights in the design of the Barcelona chair** (or any other piece in the Barcelona Collection) before this past year.  Thus, in an April 25, 1968 protest letter to Triangle Furniture Company, Knoll complained of an advertisement featuring a drawing of the Barcelona chair and claimed that the advertisement constituted unfair competition for the following reasons:

(1)  The two chairs appearing in the advertisement appear to be reproductions of the same photograph, except that the negative has been reversed in one of the photographs.  The use of the same photograph to illustrate the cheap chair and the Knoll "BARCELONA" chair, thereby implying that the two chairs are of equal quality and appearance, constitutes unfair competition.

(2)  The use of the Knoll name and model identification without using any name for the manufacturer or model identification for the imitation constitutes unfair competition.

(3)  The presentation of the prices of the two chairs, where the cheap chair would appear to have an advantage, in large type, and the presentation of the comparison of the two chairs, where the Knoll chair would have the advantage, in a considerably smaller type also constitutes unfair competition.

Although Knoll insisted that Triangle Furniture "drop immediately the practice of presenting such advertisements as this"  (Knoll documents K024857-58, Bergsman Affidavit, **Exhibit 3**), **it never voiced any protest concerning Triangle Furniture's sale of the Barcelona chair itself.**

In a November 14, 1968 protest letter to Maurice Villency, Inc., Knoll complained about the advertisement shown below appearing in the *New York Times* on April 28, 1968.



Knoll claimed that this advertisement constituted unfair competition for the following reasons:

> (1)   The word "original" implies that the designated furniture is in fact that originally designed by Mies van der Rohe or is made under his auspices.   Art Metal-Knoll Corporation is the only U.S. furniture manufacturer which has such an arrangement with Mies von (*sic*) der Rohe.

> (2)     The word "BARCELONA" in the advertisement is
>          used in a manner indicating that it is a trademark of
>          Maurice Villency.  BARCELONA is not a trademark
>          of Maurice Villency and is in fact the subject of U.S.
>          Registration  No.  772,313  of  Art  Metal-Knoll
>          Corporation.

Knoll insisted that Maurice Villency, Inc. "immediately stop the practice of presenting

such advertisements as this."  (Knoll documents K024855-56, K024862-63, Bergsman

Affidavit, **Exhibit 3**).  Again, **Knoll never voiced any protest concerning Maurice**

**Villency's continued sale of the Barcelona chair (or table)**.  (Knoll documents

K024867-68, Bergsman Affidavit, **Exhibit 3**).

In its November 15, 1968 protest letter to M. L. Alpert Co., Inc., Knoll

complained of an Alpert advertisement, describing it as follows:

> That advertisement shows two chairs and a table and bears
> the legend in bold type "THE ORIGINAL  BARCELONA
> CHAIRS".  The advertisement also refers to "the original
> GLASS and STAINLESS STEEL TABLES". The chairs and
> tables designated "BARCELONA" in the advertisement are
> clearly copies of those designed by Mies von (*sic*) der Rohe.

Knoll stated that this advertisement constituted unfair competition for the following

reasons:

> (1)     The word "original" implies that the designated
>          furniture is in fact that originally designed by Mies van
>          der Rohe or is made under his auspices.  Art Metal-
>          Knoll Corporation is the only U.S. furniture
>          manufacturer which has such an arrangement with
>          Mies van der Rohe.
>
> (2)     The word "BARCELONA" in the advertisement is
>          used in a manner indicating that it is a trademark of
>          Alpert.  BARCELONA is not a trademark of Alpert

and is in fact the subject of U.S. Registration No.
772,313 of Art Metal-Knoll Corporation.

Knoll insisted that M. L. Alpert Co., Inc. "immediately stop the practice of presenting
such advertisements as this."   (Knoll documents K024853–54, Bergsman Affidavit,
**Exhibit 3**).  Again, **Knoll never uttered a word of protest about Alpert's continued
sale of the Barcelona chair or table**.

The purpose in calling the Court's attention to such older advertisements is to
demonstrate that shortly before defendants entered the market, Knoll had already publicly
announced to its competitors (on repeated occasions) that they could sell the Barcelona
Collection if they did not use the words "original" or "Barcelona" in doing so.  As a result
of Knoll's conduct, consumers and the media understood that the Mies van der Rohe
furniture designs were in the public domain.  Lawrence Gerber, a Palazzetti and Knoll
customer, gave the following testimony regarding the Barcelona chair:

> Q.   Did he [Palazzetti] assure you that he sold the original
> authorized version of the Mies van der Rohe Barcelona
> chair?
>
> A.   He felt -- and there's been much said on this through
> my studies, and it's been highly published - - that the
> design  is in the public domain, and he strongly felt, as
> others do in this industry, that because the design is in
> the public domain that he was selling the authorized
> version.

(Gerber Dep., p. 9, line 21 to p. 10, line 5, Meyer Affidavit, **Exhibit 1**).[7]  See also,
Misthal Dec. ¶8, Exhibit G comprising three articles from the *Grand Rapids Press,*

---

[7]     Lawrence Gerber is the President of Inducere Company, Incorporated, an interior design,
space planning, real estate development and real estate management company.  (Gerber Dep.,
*Footnote continued on next page …*

*Chicago Tribune,* and *Metropolitan Home* stating that the designs of Mies van der Rohe are in the public domain.[8]

Indeed, Knoll recognized by 1986 that it was but one of many companies promoting and selling the Barcelona Collection and acknowledged that copies of the Brno chair were commonplace. ***Contains Confidential/Restricted Confidential Information Filed Under Seal Pursuant To The Protective Order Of This Court. To Be Opened Only By Or As Ordered By The Court Or By Stipulation Of The Parties Subject To The Approval Of The Court.*** (Knoll's document 708714, Bergsman Affidavit, **Exhibit 2**) (confidential and filed under seal).

To increase its competitive position against the many companies selling reproductions of the Barcelona Collection, Knoll decided in the late 1980s to promote that it was selling "authorized" reproductions of Mies van der Rohe designs and sought to heighten the public awareness of Knoll's relationship with the Museum Of Modern Art. One of the measures proposed by Knoll included  stamping or embossing the names of Mies van der Rohe, The Museum of Modern Art, and Knoll International into the leather upholstery or steel frame of each piece of furniture in the Mies "Archive Collection".  By way of letter dated February 27, 1990 to Stuart Wrede (Director of the Department of Architecture & Design at The Museum of Modern Art), Donald M. Rorke (the Executive Vice President of Design at Knoll) explained that Knoll's purpose was to "differentiate

*Footnote continued from previous page ...*

p.5, lines 17-21; p. 28, lines 13-16, Meyer Affidavit, **Exhibit 1**).  Mr. Gerber was subpoenaed by Knoll.

[8]     Marc Misthal is one of the attorneys for Knoll and submitted a Declaration in opposition to Defendants' Motion For Summary Judgment re: Laches.

our Mies Collection from the numerous copies sold at lower price levels and without restriction, by companies having no royalty obligations."   (Knoll's document 707384, Bergsman Affidavit, **Exhibit 2**).[9]

Defendants are in the business of selling furniture, particularly furniture possessing classic designs (such as those of Mies van der Rohe) that are unprotected by patents or copyrights in this country.  The fundamental concept behind the reproduction of such classic furniture designs has been that the reproductions must be accurate and faithful to the original specifications of the designs themselves.  In other words, there was, and is, no reasonable available alternative to the faithful reproduction of a classic design.  It is either a faithful copy, or it is not.  If it is not a faithful reproduction, then there is no commercial market for that product.

In order to promote their reproductions of classic modern furniture, including the Barcelona Collection, Defendants have used images of the Mies van der Rohe furniture designs in price guides, websites, and advertising.  (Palazzetti Affidavit, Exhibits 1-6; Gordon Affidavit, Exhibits 1-4; Morbidelli Dec., Exhibits 1-8; DiCarlo Affidavit, **Exhibit 2**).  As discussed more fully *infra*, Defendants use the Mies furniture designs only for the products themselves, not as trademarks or "source indicators."

---

[9]     Ludwig Glaser, the longtime Curator of the Museum of Modern Art, observed in his published work on Mies van der Rohe in 1977, that by the time Mies entered into a manufacturing contract with the plaintiff in 1965, that "contract covered only the right to use his name, as none of his designs were any longer protected."  "Ludwig Mies van der Rohe," by L. Glaser, redacted copy submitted as Bergsman Affidavit, **Exhibit 5**).

Knoll was well aware of Defendants' use of these furniture designs and in a letter to Palazzetti dated May 18, 2000, Patrick Milberger, Vice President and General Counsel of Knoll, first objected to Palazzetti's sale of the Barcelona Collection in connection with the "BARCELONA" term (significantly, however, making no objection whatsoever to Palazzetti's importing, sale, offering for sale, advertising or distribution of reproductions of the Barcelona chair and couch).  See, Sergio Palazzetti Affidavit ¶14 and **Exhibit 7**.

By way of correspondence dated June 13, 2000, Sergio Palazzetti responded to Knoll's protest letter, explaining that he had long been making "fair use" of the term "Barcelona" to refer to the "particular chair designed by Ludwig Mies van der Rohe in 1929 for the World Exposition in Barcelona".  Moreover, Palazzetti explained that the relevant trade and interested public "uniformly associated 'Barcelona' with a particular chair design, rather than a single manufacturing source."  (Sergio Palazzetti Affidavit ¶15 and **Exhibit 8**).  **Knoll never responded to S. Palazzetti**.  (Sergio Palazzetti Affidavit ¶16).

## III.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment may be granted where the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  In reviewing a motion for summary judgment, the burden is on the moving party, and all facts must be viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, when the moving party has asserted facts which demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant.  FED.R.CIV.P. 56(e).

Only disputes over material facts -- facts that might affect the outcome of the suit -- will preclude entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  However, "[i]f the evidence [presented by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id* at 249-250.  To defeat a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Id* at 252.  Thus, in determining whether to grant summary judgment on behalf of Palazzetti, the Court must:

> (1)    determine whether a genuine factual dispute exists based on evidence in the record; and,
>
> (2)    determine, based on the substantive law at issue, whether the fact in dispute is material.

*Stewart v. Adidas A.G.,* 1997 WL 65904 *3 (S.D.N.Y. 1997).

### B.    Fair Use

Descriptive terms may acquire trademark rights upon the acquisition of acquired distinctiveness or secondary meaning.  However, those trademark rights extend only to the "source significance" that has been acquired, not to the original descriptive meaning of the terms.  In other words, the trademark owner may not remove a descriptive term

from the lexicon:  "Reasonable use of a descriptive term by another solely to describe the nature or characteristics of its own goods or services will not subject the user to liability for infringement."   <u>Restatement (Third) Unfair Competition</u> §28, comment a (1995); *Car-Freshener Corporation v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 269 (2nd Cir. 1995).  This defense is commonly referred to as the "fair use" defense.

"Fair use" is a defense to liability under the Lanham Act even if a defendant's conduct would otherwise constitute trademark infringement.   Indeed, "fair use" is an absolute defense to Lanham Act liability.  *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.,* 125 F.3d 28, 29 (2nd Cir. 1997); *Radio Channel Networks, Inc. v. Broadcast.com, Inc.,* 1999 WL 124455 (S.D.N.Y. 1999) (denying plaintiff's motion for preliminary injunction and granting defendant's motion for summary judgment on fair use grounds alone); *Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477 (S.D.N.Y. 1983) (fair use is alternative grounds for granting summary judgment). The "fair use" defense applies not only to descriptive words, but also to product shapes.  See, for example, *Car-Freshener Corp. v. S.C. Johnson & Son, Inc., supra.*

Section 33(b)(4) of the Lanham Act, 15 U.S.C. §1115(b)(4) defines "fair use" as follows:

> [A] use, otherwise than as a mark, of . . . a term or ***device*** which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.  (Emphasis added).

The statutory defense permits one to lawfully use otherwise protected trademarks in descriptive ways, but not as trademarks to identify and distinguish their goods and services. *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra,* 125 F.3d at 30; *Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra,* 70 F.3d at 270. Professor McCarthy has noted that the above-noted Lanham Act provision is but a "statutory restatement" of the corresponding common law defense. 2 McCarthy On Trademarks And Unfair Competition, §11:45 at pp. 90-91 (2005 ed.).

> There are two elements to a "fair use" defense:
>
> (1)   Defendant uses the term or device descriptively, not as a trademark; and,
>
> (2)   Defendant uses the term or device fairly and in good faith.

*Id.* Determining whether a defendant's use of a plaintiff's mark is a "fair use" can be decided on a motion for summary judgment. *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra* (affirming grant of summary judgment for defendant who asserted fair use defense); *See also, Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra* at 270; *Something Old, Something New Inc. v. QVC Inc.,* 53 U.S.P.Q.2d 1715, 1721 (S.D.N.Y. 1999).

When the two fair use elements are met, it is simultaneously possible for a defendant to have used the plaintiff's term or device in good faith in a descriptive sense and for the term or device to have still acquired secondary meaning (and remain otherwise protected). In this regard, the Second Circuit has stated:

> So long as the defendants in good faith are using the phrase in
> its descriptive sense and prominently identifying the product
> with the defendants' marks, the defendants incur no liability
> simply because the materials containing the descriptive
> phrase are so widely disseminated as to form some degree of
> association in the public's mind between the phrase and the
> product.  That too is a risk that the plaintiff took in selecting
> as its mark a phrase that was not only descriptive but readily
> recognized by consumers.

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra* at 31; *Radio Channel Networks, Inc. v. Broadcast.com, Inc., supra,* 1999 WL 124455 *6.  Any confusion that results from the defendant's "fair use" of the term or device, is a risk that the plaintiff accepted when it adopted a descriptive term as a mark.  *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra* at 30;  *Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra.*; *Something Old, Something New Inc. v. QVC Inc., supra,* 53 U.S.P.Q.2d at 1721.

In assessing the "fair use" defense, the emphasis is directed to the defendant's use of the subject term or device, not the plaintiff's own use.  A defendant's use may be "fair use," even if the plaintiff's mark is not categorized as descriptive, so long as the defendant is using the word or device descriptively, and not as a mark.  *Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra* at 269.

## C.   Defendants' Descriptive Use

Defendants are selling the furniture products at issue because they are -- and long have been -- classic modern furniture designs.  (Palazzetti Affidavit ¶¶4-5; Gordon Affidavit ¶5; Morbidelli Dec. ¶6; Magnusson Dec. ¶6; Lutz Dec. ¶4-5).  The subject

designs were viewed as icons of furniture design **decades before** Knoll even began manufacturing them.   Knoll has since described those furniture designs as icons of modern furniture.  (Bergsman Affidavit, Exhibit 1). Defendants are merely reproducing the classic furniture designs for which there are no alternative designs.[10]  "The absence of alternative terms capable of adequately describing the pertinent characteristic is also relevant in assessing the commercial justification for the use and hence the scope of permissible fair use".  Restatement (Third) Unfair Competition §28, comment c (1995).  In order to sell the classic designs demanded by consumers, defendants must be able to faithfully reproduce the furniture designs of Mies van der Rohe thereby establishing the commercial justification for the reproduction of those products.  If the defendants are not permitted to make reproductions of the furniture designed by Mies van der Rohe, then they will be limited in their sale of classic furniture designs.[11]  (See, Palazzetti Affidavit ¶¶4-5; Gordon Affidavit ¶5; Morbidelli Dec. ¶6).

The Mies van der Rohe furniture designs are desired by consumers because they are classic designs, not because they are recognized as Knoll's trademarks.  In this regard, the Supreme Court has noted that consumers are aware that product designs are intended to render products more useful and appealing as opposed to functioning as trademarks.  *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 213 (2000).  Defendants are lawfully meeting the consumer demand for these visually appealing products at

---

[10]    If you make a change to a classic design, it is no longer the classic design.  It is something new and different.

[11]    The equivalent of removing a descriptive term from the lexicon.

affordable prices.  Defendants do not "use" furniture designs as indicators of source --
*i.e.,* as trademarks.  They use their own word marks to advise or inform customers of the
source of the goods.  The goods are furniture.  The furniture are not trademarks.
Accordingly, the defendants' use of the Mies van der Rohe furniture designs is a clear
instance of non-trademark use because the product designs function as appealing
products, not trademarks.

    Non-trademark use of the challenged product configurations may be evidenced by
the use of defendants' trademarks in connection with the products at issue.  *Cosmetically
Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra* at 31;  *Car-Freshener
Corporation v. S.C. Johnson & Son, Inc., supra*  at 270;  <u>Restatement (Third) Unfair
Competition</u>, *supra,* §28, comment c ("In some instances the presence of defendant's own
trademark in conjunction with the descriptive term can be sufficient to emphasize that the
use is merely descriptive").  In the present case, all of the defendants sell their products
under their respective house marks.  (Palazzetti Affidavit, Exhibits 1-6; Gordon Affidavit,
Exhibits 1-3;  Morbidelli Dec., Exhibits 1-8; DiCarlo Affidavit, **Exhibit 2**).

    An alternative approach to analyzing defendants' use of the product designs is to
review their advertising and compare the way they use the product designs at issue *vis-à-
vis* product designs which are not asserted to be trademarks.  *EMI Catalogue v. Hill,
Holiday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 65 (2nd Cir. 2000); *Radio Channel
Networks, Inc. v. Broadcast.com, Inc., supra* *6; <u>Restatement (Third) Unfair
Competition</u>, *supra,* §28, comment c ("The physical nature of the use in terms of size,
location, and other characteristics in comparison with the appearance of other descriptive

- 18 -

matter or trademarks is also relevant to the fairness of the use").  As plainly demonstrated by defendants' advertising, those parties treat all of the furniture designs in the same manner.  The Defendants do not use the furniture designs as "source indicators;" rather they use the furniture designs as the products themselves. (Palazzetti Affidavit, Exhibits 1, 2, 4-6; Gordon Affidavit, Exhibits 1-4;  Morbidelli Dec., Exhibits 1-8; DiCarlo **Exhibit 2**).    Thus, Defendants have used the product designs only as reproductions of classic furniture designs, rather than trademarks, and Knoll has **not** alleged otherwise.[12]

### D.    Defendants' Good Faith

The fair use analysis also requires a finding that defendants used the protected marks in good faith.  Many factors influence a determination of good faith.  This Court has held that the key to the "good faith" element is whether the defendants believe that they are using the term or device at issue descriptively:

> A defendant which knowingly uses words in which another claims a trademark right will not be found to have acted in bad faith if it believes that it is using the challenged words in their descriptive sense. [Citations Omitted].    The determination of whether or not defendant acted in bad faith focuses on "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior users' product.

---

[12]      Indeed, Knoll merely alleged that defendants were selling furniture in the same form as the subject trademarks and misrepresenting themselves as "a legitimate source" of those furniture designs.  (Palazzetti Complaint ¶¶42, 54, 55, 59, and 60; Gordon Complaint ¶¶39, 45, 49 and 50; Casprini Answer and Counterclaim ¶¶87, 91, 95 and 96).

*Radio Channel Networks, Inc. v. Broadcast.com, Inc.,* 1999 WL 124455 *5 (S.D.N.Y. 1999). The defendants reasonably believed that they were entitled to reproduce the furniture designs at issue because they were in the public domain. (Palazzetti Affidavit ¶6; Gordon Affidavit ¶4; Morbidelli Dec. ¶7 ). That belief was fostered, at least in part, by the marketing environment created by Knoll itself.

The fact that defendants may have known of plaintiff's use of the designs is not sufficient to demonstrate bad faith. Knoll must prove something more than mere knowledge of the claimed "mark" on the part of the defendants.[13] *Id* at *5, *citing, W.W.W. Pharm. Co. v. Gillette Co.,* 984 F.2d 567, 575 (2nd Cir. 1993); *Lang v. Retirement Living Publ'g Co.,* 949 F.2d 576, 583-584 (2nd Cir. 1991); and others.

Good faith is supported by the fact that the defendants label their advertising with their house marks. (Palazzetti Affidavit Exhibits 1-6; Gordon Affidavit Exhibits 1-4; Morbidelli Dec. Exhibits 1-8). This prominent branding of the Barcelona Collection products with defendants' own trademarks is traditionally-recognized evidence of a defendant's good faith. *See, Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., supra* at 31; *Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra* at 270; Restatement (Third) Unfair Competition, *supra,* §28, comment c ("In some

---

[13]     In fact, the defendants were unaware that Knoll claimed the exclusive right to sell the furniture designs created by Mies van der Rohe. At the time defendants entered the market, Knoll had fostered an environment leading competitors, the public, and the media to reasonably believe the furniture designs created by Mies van der Rohe were in the public domain. This environment is evidenced by Knoll's own statements that the subject designs were in the public domain, its failure over decades to protest the sale of those product designs until October of 2004, and unsolicited media coverage touting the public domain nature of the furniture designs.

instances the presence of defendant's own trademark in conjunction with the descriptive term can be sufficient to emphasize that the use is merely descriptive").

Comparing how defendants use the designs comprising the Barcelona Collection with other furniture products is also relevant evidence of whether defendants' use is a "good faith" usage. *Radio Channel Networks, Inc. v. Broadcast.com, Inc., supra,* 1999 WL 124455 *6 (defendant did not use the word "Radio Channel" any more prominently or differently than the words identifying its other sixteen channels suggesting that defendants used the plaintiff's mark in good faith). In their advertising, defendants present -- and have always presented -- the designs comprising the Barcelona Collection in the very same way they present dozens of other furniture pieces which have never been claimed to be trademarks. (Palazzetti Affidavit, Exhibits 1-6; Gordon Affidavit Exhibits 1-6; Morbidelli Dec. Exhibits 1-8).

In analyzing the "fair use" defense, precedents discussing "good faith" as a likelihood of confusion factor are relevant because the inquiry is the same, namely, whether a defendant in adopting its mark intended to capitalize on plaintiff's goodwill. *EMI Catalogue v. Hill, Holiday, Connors, Cosmopulos Inc., supra,* 228 F.3d at 66. In this regard, bad faith cannot be inferred simply from the fact that defendants intentionally copied the designs of Mies van der Rohe. There is a fundamental distinction between the "intent to reproduce" and the "intent to infringe", even though both involve the act of copying. A defendant who copies a competitor's product configuration can certainly have (and in this case does have) valid reasons for doing so, apart from any desire to confuse consumers. Thus, the Second Circuit has noted that copying a product configuration to

manufacture an equivalent product does not justify an inference of bad faith. *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 269 F.3d 114, 124 (2nd Cir. 2001); *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993, 1005 (2nd Cir. 1997) ("Indeed, copying in order to market a functionally equivalent alternative product might well benefit consumers, which is one of the aims of the Lanham Act").

Likewise, the fact that defendants may have known that Knoll was the only company authorized by Mies van der Rohe to sell his furniture designs is not sufficient to prove that defendants acted in bad faith. "Knowing use" is not necessarily unfair use. *W.W.W. Pharmaceutical Co. v. Gillette Co., supra,* 984 F.2d at 575 (knowledge of plaintiff's mark "does not necessarily give rise to an inference of bad faith"); *United States Shoe Corporation v. Brown Group, Inc., supra,* 740 F.Supp. at 199 n.3; Restatement (Third) Unfair Competition, *supra,* §28, comment d ("Knowledge of a prior trademark use of a term does not in itself prove a lack of good faith"). Indeed, since a product design almost invariably serves purposes other that source identification, *Wal-Mart Stores, Inc. v. Samara Brothers, Inc., supra,* 529 U.S. at 213, copying unpatented product designs typically has no relevance to an attempt to confuse the consumer as to the source of those products.

In discussing a defendant's intent as one of the relevant likelihood of confusion factors, this Court has observed: "While intentional copying can raise a presumption of consumer confusion, it is also true that the intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product. Only the latter form of imitation is bad-faith copying." *Best*

*Cellars, Inc. v. Wine Made Simple, Inc.,* 320 F.Supp.2d 60, 78 (S.D.N.Y. 2003); *see also, Deere & Co. v. MTD Holdings Inc.,* 2004 WL 324890 *41 (S.D.N.Y. 2004); *Regal Jewelry Co. v. Kingsbridge Int'l, Inc.,* 999 F.Supp. 477, 492 (S.D.N.Y. 1998) ("By itself, the act of copying a product's packaging does not create an inference that a defendant intended to cause confusion with the senior user's product"); *Tough Traveler, Ltd. v. Outbound Products,* 989 F.Supp. 203, 215 (N.D.N.Y. 1997) ("It cannot automatically be inferred that intentionally copying a plaintiff's trade dress is for the purpose of deceiving or confusing consumers as to the source of product").  In the case *sub judice,* defendants did not act in bad faith; rather, they had a legitimate, non-predatory reason for reproducing the furniture designs created by Mies van der Rohe (*i.e.,* reproducing classic furniture designs they reasonably believed to be in the public domain).

## IV.   <u>CONCLUSION</u>

> When a plaintiff chooses a mark with descriptive qualities, the fair use doctrine recognizes that 'he cannot altogether exclude some kinds of competing use', particularly those which use . . . [designs] in their primary descriptive and non-trademark sense.[14]

The above-noted observation made by Judge Laval applies directly to the present dispute now before this Court.  Knoll, to the extent that it even uses the Mies furniture designs as "trademarks," cannot exclude its competitors from using those designs in their original, non-trademark manner.

---

[14]     *United States Shoe Corporation v. Brown Group, Inc., supra,* 740 F.Supp. at 197.

The fair use doctrine is meant to address the very situation created by Knoll's belated claims of exclusivity in these unpatented furniture designs.  Moreover, the doctrine recognizes fundamental public policy goals in establishing parameters to a plaintiff's overreaching use of the Lanham Act to stifle competition.  As the Second Circuit observed in *Car-Freshener Corporation v. S.C. Johnson & Son, Inc., supra,* 70 F.3d at 269 in connection with the "fair use" doctrine:

> It is a fundamental principle marking an outer boundary of the trademark monopoly that, although trademark rights may be acquired in [an]… image with descriptive qualities, the acquisition of such rights will not prevent others from using the … image in good faith in its descriptive sense, and not as a trademark [Citations Omitted]. The principle is of great importance because it protects the right of society at large to use . . . images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity.

In the case *sub judice,* there is **no evidence** that the defendants have ever used the product designs as "trademarks."  Public policy will be fostered by allowing these defendants to do what they have been doing for decades -- providing affordable reproductions of classic furniture designs to the American consumer.

Defendants submit that the "fair use" doctrine is particularly applicable to the present case where the plaintiff seeks to **withdraw** from the public domain unpatented product designs under the guise of "trademark" law.  As the Third Circuit cautioned in *Versa Products Company, Inc. v. Bifold Company (Manufacturing) Ltd.,* 50 F.3d 189, 207 (3rd Cir. 1995):

> One primary purpose of the Lanham Act is to foster fair competition [citations omitted].  Indeed, we have said that prevention of unfair competition is the doctrinal basis for

trade dress infringement suits under the Act [citation omitted]. Where product configurations are concerned, we must be especially wary of undermining competition. Competitors have broad rights to copy successful product designs when those designs are not protected by (utility or design) patents. It is not unfair competition for someone to trade off the goodwill of a **product**, *see Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111 (1938); it is only unfair to deceive consumers as to the origin of one's goods and thereby trade off the goodwill of a prior **producer** (original emphasis).

In the case *sub judice*, there is a complete absence of any evidence that these defendants have sought to deceive consumers as to the **origin** of their goods. While the defendants have certainly intended to trade off the goodwill of the unpatented icon created by Mies van der Rohe seventy-five (75) years ago, that does not mean that they have tried to trade off any goodwill of Knoll. The distinction is critical and, for that reason, summary judgment on behalf of the defendants is warranted in this case.

**PALAZZETTI EXPRESS, INC.**
**ARTHUR GORDON ASSOCIATES, INC.**
**CASPRINI GRUPPO INDUSTRIALE S.p.A.**

Date: June 2, 2005          By:     <u>s/Samuel D. Littlepage/</u>
                                    Samuel D. Littlepage, Esq. (SL3560)
                                    Marc A. Bergsman, Esq. (*PRO HAC VICE*)
                                    Nicole M. Meyer, Esq. (*PRO HAC VICE*)
                                    **DICKINSON WRIGHT PLLC**
                                    1901 "L" Street, N.W., Suite 800
                                    Washington, D.C.  20036-3506
                                    Tel:    (202) 457-0160
                                    Fax:    (202) 6591559

                                    Richard I. Janvey, Esq. (RJ1166)
                                    **JANVEY, GORDON, HERLANDS,**
                                    **RANDOLPH & COX, L.L.P.**
                                    355 Lexington Avenue, Tenth Floor

New York, New York  10017-6603
Tel:    (212) 986-1200
Fax:    (212) 983-0772

*Attorneys For Defendants*

## CERTIFICATE OF SERVICE

**I, HEREBY CERTIFY** that on this _____2nd_____ day of June, 2005 a true and correct copy of the foregoing **_REDACTED DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR CONSOLIDATED MOTION FOR SUMMARY JUDGMENT RE: FAIR USE_** was served by the following manner upon:

**FedEx:**                                          GEORGE GOTTLIEB, ESQUIRE
                                                    **GOTTLIEB, RACKMAN & REISMAN, P.C.**
                                                    270 MADISON AVENUE
                                                    NEW YORK, NEW YORK  10016-0601

**FedEx:**                                          THOMAS C. MORRISON, ESQUIRE
                                                    **PATTERSON, BELKNAP, WEBB & TYLER LLP**
                                                    1133 AVENUE OF THE AMERICAS
                                                    NEW YORK, NEW YORK  10036

                                                    _s/Samuel D. Littlepage/_                          

DC 71310-1 102705v1